IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

THE ESTATE OF FRANKLIN M. TATUM, JR                                    PLAINTIFF

vs.                                                CIVIL ACTION NO. 2:09cv00048-KS-MTP

UNITED STATES OF AMERICA                                               DEFENDANT

***CONSOLIDATED WITH***

THE ESTATE OF DORIS E.T. TATUM                                         PLAINTIFF

vs.                                                CIVIL ACTION NO. 2:09cv00049-KS-MTP

UNITED STATES OF AMERICA                                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment [Doc. # 27] (July 23, 2010), filed on behalf of Plaintiffs, the Estates of Franklin M. Tatum, Jr. and Doris E.T. Tatum and a Motion for Summary Judgment [Doc # 29] (July 23, 2010) filed on behalf of the United States of America. The Court, having reviewed the motions, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds that the Plaintiffs' summary judgment motion should be **denied** and the United States' summary judgment motion should be **granted**. The court specifically finds as follows:

## I. FACTS

The parties jointly stipulated to the following undisputed facts. *See* Joint Stip. [Doc # 25].

      1.      Franklin M. Tatum, Jr. ("Tatum Junior") died testate on October 29, 2003 in Forrest County, Mississippi.  Paul T. Tatum was appointed executor of the Estate of Franklin M. Tatum, Jr.

      2.      Doris Tatum[1] died testate on October 13, 2001 in Forrest County, Mississippi. Erik Lowrey is serving as executor of her estate.

      3.      Tatum Junior was the son of Frank M. Tatum, Sr. (hereinafter "Tatum Senior"). Tatum Senior died testate on March 1, 1987, and Tatum Junior was appointed co-executor of his father's estate. His Last Will and Testament was probated in the Chancery Court of Forrest County, Mississippi (hereinafter the "Probate Court").

      4.      Tatum Junior was the only child of Tatum Senior living at the time of his death. Tatum Senior's only other child, John Merl Tatum, died in 1978, predeceasing Tatum Senior by nine years.  John Merl Tatum was the father of the two grandsons named in the will, John M. Tatum, Jr., and Robert O'Neal Tatum.  Tatum Junior had four children: Paul T. Tatum, Franklin M. Tatum, III, Doris Elaine Tatum Yon, and Dorothy Jane Tatum.

      5.      Tatum Senior published his Last Will and Testament on May 11, 1979, and the Last Will and Testament was duly admitted to probate by Judgment on March 5, 1987.

      6.      Item III of the Last Will and Testament of F.M. Tatum stated:

> All the rest, residue and remainder of my property, both real and personal and mixed, and wheresoever situated, I give, devise and bequeath as follows:

---

[1] The United States asserts that Doris E.T. Tatum, the wife of Franklin Tatum, Jr., is liable for gift tax because, pursuant to 26 U.S.C. § 2513, a gift by one spouse shall be considered as made one half by the spouse giving the gift and one half by the other spouse.  *See* United States' Mem. Supp. Mot. Summ. J. 2 n.1 [Doc. # 30].

>> To my son, Franklin M. Tatum, Jr., 60%;
>> To my grandson, John Merl Tatum, Jr., 20%;
>> To my grandson, Robert O'Neal Tatum, 20%.
>
> Should my son Franklin M. Tatum, Jr., or either of my grandsons, John Merl Tatum, Jr., or Robert O'Neal Tatum, predecease me, their descendants shall take *per stirpes* the share of their deceased ancestor.

Included in the residuary of Tatum Senior's estate passing under Item III of his Will was stock in Tatum Development Corporation, First Capital Corporation (Trustmark), and Hibernia Corporation. In accordance with Item III of Tatum Senior's Last Will and Testament, Tatum Junior's share in the residuary was 60%.

7.   On August 27, 1987, Tatum Junior sent a letter to himself and the other two executors of Tatum Senior's Estate purporting to disclaim any interest in the stock passing under Item III of Senior's Last Will and Testament.[2]

8.   On March 3, 1988, Tatum Junior, as Executor of Tatum Senior's Estate, petitioned the Probate Court for a Judgment of Instruction, requesting instructions from the Court regarding passage of the disclaimed stock interests identified in Article III of Senior's Last

---

[2]The letter is addressed to Joshua Green, Jessie Wilson Tatum, and to himself, the three executors of the Tatum, Sr.'s will, and says:

> Gentlemen and Madam:
>
> I am a residuary legatee under Item III of the Last Will and Testament of F.M. Tatum. I hereby disclaim any interest in the stock of Tatum Development Corporation, First Capital Corporation, and Hibernia Corporation to which I might be entitled under Item III of the Last Will and Testament of F.M. Tatum.
>
> Sincerely,
>
> Franklin M. Tatum, Jr.

Joint Stip., Ex. 2 [Doc. # 25-2].

3

Will and Testament.  The Disclaimer was filed in the Probate Court with this document.

  9. On March 3, 1988, the Probate Court issued an order titled "Judgment of Instruction," which had been prepared and presented to the Court by counsel for the Executors of Tatum Senior's Estate.  The Judgment of Instruction stated that the disclaimed stock would pass to the children of Tatum Junior as if Tatum Junior had predeceased Senior.

  10. In 1995, Tatum Junior resigned as one of the executors of Senior's estate.

  11. On February 6, 1997, Tatum Senior's Estate filed its "Petition for Instructions and Other Relief," all beneficiaries to the Tatum Estate were noticed, and a hearing date was set for June 26, 1997.  The Petition requested, *inter alia*, instructions concerning the disclaimed portion of Tatum Senior's Last Will and Testament specifically requesting that the court ratify and reaffirm its March 3, 1988, Judgment of Instructions was a correct interpretation of Mississippi law.

  12. On June 20, 1997, Tatum Junior filed a "Brief in Response to Issue Raised by Petition for Instructions and Other Relief" in which he requested that the Probate Court reaffirm its March 3, 1988, order regarding the effect of his disclaimer.

  13. On June 26, 1997, the Probate Court entered an order reaffirming its March 3, 1988 decision allowing for the disclaimed property to be distributed to Tatum Junior's [heirs].  The order had been prepared and [sic] Tatum Senior's Estate and approved as to form by Tatum Junior.  The stock was then distributed to Tatum Junior's children in 1997.

  14. On October 8, 2008, the IRS provided the Franklin Tatum Estate with a Notice of Deficiency, indicating that the Estate had failed to pay $737,313 in gift taxes for the tax year ending December 31, 1997.  The Examiner also proposed a negligence penalty under 16 U.S.C.

§ 6662(c).

15.     On October 8, 2008, the IRS provided the Doris Tatum Estate with a Notice of Deficiency, indicating its position that the Estate had failed to pay $742,814 in gift taxes for the tax year ending December 31, 1997.

16.     On November 25, 2008, the Franklin Tatum, Jr. Estate paid, under protest, the Department of Treasury $884,464.00 in tax and penalties and the Doris Tatum Estate paid $742,814.00 under protest for the calendar year 1997.

17.     Should the United States prevail in this action, the Estates will be liable for statutory interest until full payment.  As of July 20, 2009, the Franklin Tatum, Jr. Estate owed $942,721.17 and the Doris Tatum Estate owed $795,635.40 in interest on the disputed gift tax assessments.  Should the Estates prevail, the United States will be liable for statutory interest on overpayments.

18.     On November 25, 2008, each Plaintiff filed a timely Claim for Refund and Request for Abatement, along with a Waiver of Statutory Notification of Claim Disallowance. The Claims were disallowed on December 22, 2008.

## II. STANDARD OF REVIEW

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2)*; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  To support a

motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004). Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on his pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

### III. APPLICATION

Section 2501 of the Internal Revenue Code imposes a tax on the transfer of property by gift by any individual. Section 2518(a) of the Code provides that if a person makes a qualified disclaimer with respect to interest in property, the estate and gift tax provisions of the Code will

apply to such interest as if it has never been transferred to such person. *See* 26 U.S.C. § 2518(a).

The Code then defines qualified disclaimer:

> (b) Qualified disclaimer defined.--For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if--
>
>> (1) such refusal is in writing,
>>
>> (2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of--
>>
>>> (A) the day on which the transfer creating the interest in such person is made, or
>>>
>>> (B) the day on which such person attains age 21,
>>
>> (3) such person has not accepted the interest or any of its benefits, and
>>
>> (4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either--
>>
>>> (A) to the spouse of the decedent, or
>>>
>>> (B) to a person other than the person making the disclaimer.

26 U.S.C. § 2518(b). Because the qualified exemption is an exception to the normal estate and gift tax scheme, it should be applied narrowly. *See Ark. Best Corp. v. Comm'r*, 485 U.S. 212, 220, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988). The plaintiffs bear the burden of proving that they are entitled to refunds by a preponderance of the evidence. *See Bull v. United States,* 295 U.S. 247, 260 (1935). The United States argues that the Estates have failed to show that (1) the interest in the residue passed without direction from Tatum, Jr. to someone other than himself when he disclaimed his interest and (2) the disclaimer was "irrevocable and unqualified." Because the Estates failed to meet the first requirement, discussion of the second requirement is moot.

**The Disposition of the Disclaimed Property under Mississippi Law**

The effect of Franklin Tatum, Jr.'s 1987 disclaimer on the disposition of the property is determined by state law applicable at the time. *Delaune v. United States*, 143 F.3d 995, 1001 (5th Cir. 1998). Here, Mississippi law applies. This Court should first determine whether the highest court in Mississippi has spoken to the issue. *Id.* If not, it must make its own inquiry into the relevant law and should give "proper regard" to the rulings of lesser state courts in the absence of rulings from the highest court. *Comm'r v. Estate of Bosch*, 387 U.S. 456, 463-64 (1967)*; see also Estate of Salter v. Comm'r,* 545 F.2d 494, 500 (5th Cir. 1977) ("In the absence of a case specifically in point, the best measure of that "regard", we think, would be to determine, from existing precedent, in our best judgment, whether the Supreme Court of Mississippi would have affirmed the Chancellor's decree had there been an appeal.").

Under Mississippi law, "the paramount and controlling consideration is to ascertain and give effect to the intention of the testator." *Tinnin v. First United Bank of Mississippi*, 502 So.2d 659, 663 (Miss. 1987) (quoting *Dep. Guaranty National Bank v. First National Bank of Jackson*, 352 So.2d 1324, 1326-27 (Miss. 1977)). "The surest guide to testamentary intent is the wording employed by the maker of the will." *Id.* "Indeed, we have authority to give effect to a testator's intent only where that intent has received some form of expression in the will." *Id.* (citing *Byrd v. Wallis*, 182 Miss. 499, 516, 181 So. 727, 732 (1938); Weems, Mississippi Wills and Estates, § 9-3, p. 286 (1983)). "While the intention of the testator to dispose of all of his estate may appear from the face of the will, if a condition later arises which was clearly not contemplated by the testator, it is not within the power of the courts to amend the will by attempting to supply the omission." *Byrd v. Wallis*, 182 Miss. 499, 181 So. 727, 731-32 (Miss. 1938) (citation omitted).

"If the testator has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court cannot guess at what provision he would probably have made if he had thought of it." *Id.* at 732.  However, there is a presumption against intestacy and the courts should "construe wills so as to avoid intestacy where that may reasonably be done." *Tinnin*, 502 So.2d at 663 (citing *Richardson v. Browning*, 192 So.2d 692, 694 (Miss. 1966); *Cooper v. Simmons*, 237 Miss. 630, 636, 116 So.2d 215, 218 (1959); *Richmond v. Bass,* 202 Miss. 386, 392, 32 So.2d 136, 137 (1947)).

In this case, Tatum Sr.'s will expressly provided for an alternate disposition of the residue of his estate should a beneficiary "predecease" him.  The debate between the parties is whether Tatum Sr. intended this to allow for a gift over only in the event of a literal death of a beneficiary, or any event that has the legal effect of considering the beneficiary as having predeceased the testator.  Since it is impossible for the Court to know the decedent's intent in 1979 when he published his will, the Court must turn to the opinions from Mississippi's highest court and determine if they have addressed the effect of a disclaimer on the disposition of property when the will in question provides for a gift over if the beneficiary predeceased the testator.

The Estates rely on two Mississippi Supreme Court cases in support of their argument that a disclaimer of property devised under a will is the equivalent of death.  *See Rose v. Rose*, 126 Miss. 114, 88 So. 513 (Miss. 1921); *Greely v. Houston*, 148 Miss. 799, 114 So. 740 (Miss. 1927).  In *Rose*, the Mississippi Supreme Court announced: "The rule is well established that a renunciation by the widow of a life estate bequeathed her is equivalent to its termination by her death so far as the vesting in possession of the remainder is concerned, unless a contrary

intention of the testator is manifest in the will." *Rose*, 88 So. at 514.  This particular court did not follow this rule in this case because the remainder of the life estate was to pass to her children living at the time of her death, thus creating a contingent remainder that could not be determined until the disclaiming party died, and therefore the ultimate disposition could not take immediate effect. *Id.*  In *Greely*, the decedent created a trust with the residue of his estate and named four beneficiaries who were to have a life estate in the trust with the trust corpus going to charities. *Greely*, 114 So. at 741.  The court held that the disclaimer of the life estate by the beneficiaries accelerated the devise to the charities instead of the life estate interest passing intestate to the descendants of the disclaiming beneficiaries for the life of the disclaimants.  *Id.* at 742.

The United States argues that neither of these cases is determinative because they deal with the acceleration of a remainder interest in a life estate when the life estate holder disclaims interest, and not with alternative dispositions after a disclaimer of residue as in the case at hand. In the life estate context, the remaindermen were eventually going to acquire an interest, whereas in the case at hand, the alternate disposition of Tatum's property according to the will would only occur in the event that Tatum, Jr. died before Tatum, Sr.  Otherwise, Tatum, Jr. would have absolute interest in the stocks and could subsequently dispose of them as he wished.

In contrast, the United States relies on the *Byrd* and *Moffett* decisions in support of its argument that a lapsed residuary bequest passes as intestate estate, unless the testator's intent to the contrary clearly appears in the will. *See Byrd*, 181 So. 727, 731 (Miss. 1938); *Moffett v. Howard,* 392 So.2d 509, 511 (Miss. 1981).  In *Byrd*, the will directed that the testator's residuary property "be divided equally among my relatives whose names are mentioned in this will."

*Byrd,* 181 So. at 728. The Court held that the portion allotted to one individual who predeceased the testator would not be shared among the other individuals as a class, but instead, would be considered a lapsed bequest that would be distributed through intestate succession "unless the indication of the testator to that effect clearly appears." *Id.* at 731. Similarly, the *Moffett* court held that lapsed portions of testator's residuary estate passed by intestate succession because eight brothers and sisters named as the residuary beneficiaries were individuals and not a class and the testator did not provide a contingency in the event that one of the beneficiaries predeceased the testator. *Moffett,* 392 So.2d at 511. The United States argues that since 'predeceased' can only mean that the beneficiary died before the testator, Tatum Sr. did not make clear provision for what would happen in the event of a disclaimer, and as such, the property passes to Tatum, Jr. through intestate succession. Of course, the Estates argue that these cases are inapplicable because Tatum, Sr. did provide a contingency in the event that one of the three residuary beneficiaries predeceased him, and the disclaimer had the legal effect as if Tatum Jr. predeceased Tatum Sr., and thus, the gift did not lapse.

Clearly, the Mississippi Supreme Court prior to Tatum Jr's disclaimer of his interest in 1987 had not reviewed the particular issue of whether a contingency in a will that devises property to another if the residual beneficiary predeceases the testator will be followed when the beneficiary disclaims the property instead. Under *Estate of Bosch* the Court must try to determine what the Mississippi Supreme Court would have determined to be the effect of the disclaimer. If the Court were tasked to determine the issue today, the current law in Mississippi clearly favors the Estates' position. However, Mississippi did not adopt the Uniform Disclaimer

of Property Interest Act,[3] which clearly holds that the disclaimed interest devolves as if the disclaimant had predeceased the decedent, until July 1, 1994. *See* MISS. CODE ANN. § 89-21-9(1)(a) ("the disclaimed interest devolves as if the disclaimant had predeceased the decedent" unless decedent has provided for another disposition of the property). While the Estates claim that the act merely codified the existing common law in the interest of clarity and certainty, the United States argues that the enactment changed the law because otherwise its enactment would be superfluous. Unfortunately, the legislative history surrounding the enactment of MISS. CODE ANN. § 89-21-9 cannot be found.[4]

In determining how the Mississippi Supreme Court would have ruled, the Estates argue that the highest court would have extended the holdings of the above cited cases to apply to any interest in a residuum, and not just to a life estate interest. They argue that Tatum, Sr. clearly intended to devise all of his property and that the Court should follow the presumption against intestate succession. Additionally, they argue that under *Estate of Bosch* and *Estate of Salter* the Court should look to lower court rulings as the "best measure" of the highest court's likely ruling on the issue, including the 1988 Probate Court order that the disclaimed property should be

---

[3]*See* Uniform Disclaimer of Property Interests Act § 4 (1978), Unif. Law. Ann. Dis. Prop Interest § 4.

[4]The Encyclopedia of Mississippi Law notes that the enactment of the statute changed the common law in Mississippi in two ways: (1) it allowed for partial disclaimers, and (2) it reversed *Rose* and allows acceleration of remainders when the life estate holder renounced and no longer required the actual death of the life estate holder as a contingency since the effect of a disclaimer is as if the beneficiary predeceased the testator. 9 MS Prac. Encyclopedia MS Law § 75:105. In other words, the statute did not change the "well established" rule that renunciation of a life estate is equivalent to termination of the interest by the life estate holder's death, but instead reversed the Court's reasoning for not applying the well established rule. While not as persuasive as the actual legislative history, the treatise does provide some insight into the effect of the statute on the pre-existing common law.

distributed according to the alternate disposition in the event Tatum Jr. predeceased Tatum Sr. and the 1997 Probate Court order reaffirming the earlier decision.

Finally, the Estates present an Internal Revenue Service Technical Advice Memorandum ("TAM") interpreting Mississippi law as guidance to the Court, TAM 8926001.[5] *See* 1989 WL 593805 (IRS TAM). In this 1989 TAM,[6] the IRS had to determine how the highest Mississippi court would distribute property disclaimed in a case in which a decedent's four children disclaimed interest in property passed through intestate succession to them and decedent's spouse. The memorandum stated the general rule that "disclaimed property passes as if the disclaimants predeceased the testator unless otherwise provided for in the will." The memo concluded that "there is no reason to believe that the court would not follow the WELL-ESTABLISHED rule outlined above that property subject to a disclaimer passes as if the disclaimant predeceased the decedent." Since the decedent did not have a will in the first place, there was not an alternative distribution to consider in this case, and the disclaimed property went to the children's descendants (if any). The shares belonging to the two children without descendants was divided equally between the spouse and the descendants of the other two children.

---

[5] Pursuant to 26 U.S.C. § 6110(k)(3) of the Internal Revenue Code, private letter rulings, such as "TAMs" may not be used of cited as precedent, but may still provide some guidance. In *Hanover Bank v. Commissioner*, the Supreme Court stated, "[A]lthough the petitioners are not entitled to rely upon unpublished private rulings which were not issued specifically to them, such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws." 369 U.S. 672, 686, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962); *see also Transco Exploration Co. v. Comm'r*, 949 F.2d 837, 840 (5th Cir. 1992).

[6] The decedent died in 1980. The TAM's position is contrary to the 1987 ruling by the Chancery Court that all the disclaimed property passed to the surviving spouse.

The United States argues that the common law in other jurisdictions should be persuasive and, in particular, it discusses a similar New York case at great length. *In re Waring's Will*, 293 N.Y. 186, 56 N.E. 2d 543, 544-45 (N.Y. 1944). In the *Waring* case, the testator left his residuary estate in trust to his widow for life, with the remainder upon her death going to his three sisters, Cornelia, Janet, and Susan, in equal shares. *Id.* at 188. But, "in the event that one of his sisters should die before the death of his widow leaving descendants her surviving, the share which would otherwise have gone to her should pass to her descendants in equal share *per stirpes*, but, if she should leave no descendants, such share should pass upon the death of his wife in equal shares to the survivor or survivors of the three named sisters." *Id.* Janet died before the widow and her share was added back to the residuary estate and divided between Susan and Cornelia. *Id.* Cornelia wanted to renounce $600 of her approximately $250,000 share. *Id.* at 189. Cornelia's children brought suit arguing that they were substitutional devisees for Cornelia's renounced share. *Id.* The court held that Cornelia's children could not have taken the share under the will in any circumstance except for Cornelia's death, and that event did not occur, so they were not substitutional devisees under the will. *Id.* The court noted that the testator did not expressly contemplate renunciation and the court must not "make a new will for the testator by some act of the mother alone" even if the testator had intended not to die intestate. *Id.* While the facts of the *Waring* case are nearly identical to the facts in the case at hand, its persuasive merit is questionable in Mississippi or even New York. *See In re Mixter's Estate*, 372 N.Y.S.2d 296 (1975) (finding that *Waring* was unduly harsh since testator provided for gift over and noting that the *Waring* holding was never followed in analogous case); *Estate of Paine*, 425 N.Y.S.2d 1018, 1020 (1980) (noting "intervening change of attitude" regarding renunciation of a bequest);

14

*see also Wilmington Trust Co. v. Carpenter*, 315 A.2d 625, 630 (Del. Ch. 1974) (holding that disclaimer operated as if beneficiary predeceased testator); *Swenson's Estate v. Comm'r*, 65 T.C. 243, 252-53 (1976) (guessing that Texas highest court would have ruled in accord with subsequently enacted statute that treats disclaimer as having predeceased decedent and following alternate disposition found in will instead of intestacy rules).

Though not cited by either party, there is a TAM that is factually identical to this case that supports the government's position.[7] In the 1993 TAM 9417002, the IRS had to determine what the Supreme Court of Mississippi would determine to be the effect of a disclaimer when the will provided an alternative distribution in the event that the beneficiary predeceased the testator. *See* 1993 WL 645050 (IRS TAM).[8] Here the testator left the residuary estate to A, who was her daughter, the sole residuary beneficiary, and also the named executor, but if A did not survive the decedent, then to A's children. The IRS cited the common law rule that "a renounced residuary gift under a will passes as intestate property, to the testator's heirs, unless the will indicates the testator's intention to make some other disposition of the renounced gift." *Id.* (citing 6 W. Bowe & D. Parker, Page on the Law of Wills § 49.12 (1962). *See also*, J.R. Kemper, Annotation, Devolution of Legacy or Devise Renounced During Life of Testator, 47 A.L.R.3d 1277 (1973); and 96 C.J.S. Wills, § 1226 (1957). The IRS held that the decedent's will provided an alternative disposition if A predeceased the testator, but did not provide one in the

---

[7]Although neither party argued for the application of this TAM's reasoning, it is virtually identical to the argument presented by the United States in its briefs. Further, the TAM was attached to the disclaimer in the exhibit to the Joint Stipulation. *See* Joint Stipulation, Ex. 2 at 9-12 [Doc. #25-2].

[8]In this case, the decedent died in 1989.

event that A disclaimed her interest.  Following the Mississippi Supreme Court's opinion in *Byrd*, and citing the *Waring* case from New York as persuasive, the IRS determined that the possibility of a disclaimer was not contemplated by the testator; the testator only contemplated A's death.   The court noted, however, that other states' decision were not in accord with *Waring* and that *Waring* holding had been called into question by *Mixter*.  The IRS also distinguished the Mississippi cases *Greely* and *Rose*, claiming that the acceleration of a remainderman's interest after the life estate beneficiary disclaimed was a question of when successive interests would be paid, while the question before the IRS was to whom the disclaimed property passed.   In conclusion, the IRS found that "this distribution is treated as if A, as executor, distributed an intestate interest in the stock to herself in her individual capacity and then, in her individual capacity, immediately transferred her intestate interest in the stock to her children."

     Turning back to the Tatum's disclaimer, the ultimate disposition of the property is critical in determining whether the property was a qualified disclaimer under the tax code.  If the disclaimed property was subject to the alternate disposition in Tatum, Sr.'s will and the property passed to a person other than Tatum Jr. without any direction by Tatum, Jr., then the definition for qualified disclaimer has been met.  If the disclaimed property was not subject to the alternate disposition, it would pass intestate to Tatum's Sr.'s only surviving descendant, Tatum, Jr., and would be distributed solely at his direction, and the definition of qualified disclaimer would not be satisfied. Both parties have presented convincing arguments supported by a wealth of conflicting yet persuasive sources.  It is clear that Tatum, Jr. never intended to take title to the property and the application of gift tax in this instance seems unfair.  However, the Court finds the United States's argument to be more persuasive.  This Court holds that the Mississippi

16

Supreme Court would not have upheld the probate court orders, and would instead follow the holding of *Byrd* and find that the alternate disposition if Tatum Jr. predeceased Tatum Sr. did not apply in the event that Tatum Jr. simply disclaimed his interest.  Since Tatum. Jr. disclaimed his interest and Tatum, Sr.'s will did not provide for an alternate disposition in that circumstance, the disclaimed stocks passed intestate to Tatum. Jr.  While the disclaimer disclaimed interest to the stocks he was entitled to under Item III of the will, he never disclaimed interest in whatever intestate interest he may have in the property.  Having so found, the disclaimer failed to meet the definition of a qualified disclaimer under the tax code, and the Estate of Franklin Tatum is liable for statutory interest until full payment, which amounted to $942,721.17 as of July 20, 2009, and the Estate of Doris Tatum is liable for statutory interest until full payment, which amounted to $795,635.40 as of July 20, 2009.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment [Doc. # 27] filed on behalf of the Estates of Franklin M. Tatum, Jr. and Doris E.T. Tatum is hereby **denied** and the United States' Motion for Summary Judgment [Doc. # 29] is hereby **granted.**   A separate  judgment shall be entered herein in accordance with FED. R. CIV. P 58.

SO ORDERED AND ADJUDGED this the 6th day of October, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE